# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NBA Properties, Inc., et al., | ) |
|     Plaintiffs, | ) |
| v. | ) Case No. 16-cv-11117 |
| Yan Zhou, et al., | ) Judge Sharon Johnson Coleman |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

NBA Properties, Inc., MLB Advanced Media, L.P., Major League Baseball Properties, Inc., NHL Enterprises, L.P., Collegiate Licensing Company, LLC, and Auburn University (collectively, the "Plaintiffs") brought suit against various online retail accounts for the unauthorized use of Plaintiffs' trademarks. Specifically, Plaintiffs asserted claims for trademark infringement and counterfeiting, 15 U.S.C. § 1114(1) (Count I), false designation of origin, 15 U.S.C. § 1125(a)(1) (Count II), and violations of the Illinois Uniform Deceptive Trade Practices Act, ("IUDTPA"), 825 ILCS 510/1, *et seq.* (Count IV). Default judgment has been entered against multiple defendants, while others have been voluntarily dismissed. Before this Court is Plaintiffs' motion for summary judgment against the defendants identified by and operating at least the following Internet stores: chace_expo2010, jpzh11, best999, bailey-730, ailing-9, zhangjie201680, allinprior518, qingweihewu*, chent1217-3, flus171, yifei_myson, and leixianwei2016_0 (collectively, "Defendants"). Plaintiffs seek at least $600,000 in statutory damages, reasonable attorney's fees and costs, and a permanent injunction prohibiting Defendants from advertising and selling counterfeit versions of Plaintiffs' products. For the following reasons, Plaintiffs' motion for summary judgment [59] is granted. This

1

Court grants Plaintiff's request for statutory damages, but reduces the amount to be awarded, a permanent injunction, and attorney's fees and costs.[1]

**Background**

The following facts are undisputed except where otherwise noted. Plaintiffs own multiple professional sports trademarks registered with the United States Patent and Trademark Office. (Dkt. 61 ¶¶ 1, 2). Currently at issue are three National Basketball Association Properties' trademarks ("NBA trademarks") and one Major League Baseball Properties' trademark ("MLB trademark") (collectively, "Plaintiffs' trademarks"). The NBA and MLB trademarks are valid, subsisting, in full force and effect, and incontestable. (Id. at ¶¶ 1-3).

Defendants conduct business throughout the United States, including in Illinois, via interactive commercial websites. (Id. at ¶ 17). Items for sale on Defendants' websites included merchandise bearing Plaintiffs' trademarks, selling for $8.99–$23.99. (Id. at ¶¶ 3–14). Defendants offered the following:

- chace_expo2010 offered hats bearing the MLB trademark for sale. (Id. at ¶ 3).
- jpzh11 offered hats bearing the MLB trademark for sale. (Id. at ¶ 4).
- best999 offered hats bearing the MLB trademark for sale. (Id. at ¶ 5).
- bailey-730 offered hats bearing the NBA trademarks for sale. (Id. at ¶ 6).
- ailing-9 offered hats bearing the NBA trademarks for sale. (Id. at ¶ 7).
- zhangjie201680 offered clothing bearing the NBA trademarks for sale. (Id. at ¶ 8).
- allinprior518 offered hats bearing the MLB trademark for sale. (Id. at ¶ 9).
- qingweihewu* offered clothing bearing the NBA trademarks for sale. (Id. at ¶ 10).
- chent1217-3 offered clothing bearing the NBA trademarks for sale. (Id. at ¶ 11).
- flus171 offered hats bearing the MLB trademark for sale. (Id. at ¶ 12).
- yifei_myson offered clothing bearing the NBA trademarks for sale. (Id. at ¶ 13).
- leixianwei2016_0 offered clothing bearing the NBA trademarks for sale. (Id. at ¶ 13).

Plaintiffs hired an investigator who purchased and received merchandise from Defendants' websites bearing the Plaintiffs' trademarks. (Id. at ¶ 15). Defendants were not authorized or licensed to use

---

[1] Plaintiffs ask this Court to strike Defendants' opposition brief for failure to comply with Local Rules 5.2(c) and 7.1. In this instance, this Court declines to strike Defendants' opposition, but cautions that counsel are expected to proactively comply with the rules of the Northern District and that dilatory compliance is looked upon with strong disfavor.

the Plaintiffs' trademarks at any time. (Id. at ¶¶ 3–14). Defendants claim to have made minimal sales of products bearing Plaintiffs' trademarks but provide no sales records.

**Legal Standard**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006); Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, this Court views all facts and any inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 1065 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party has met its initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Id.* at 252. Merely alleging a factual dispute cannot defeat the summary judgment motion. *Id.* at 247-48. The non-moving party must demonstrate that there is evidence on which the jury could reasonably find for it. *Id.* at 252.

**Discussion**

*A. Liability*

To succeed on their trademark infringement and counterfeiting, false designation of origin, and IUDTPA claims, Plaintiffs must establish that they have a protectable trademark and that the Defendants' misuse of the trademark creates a likelihood of confusion among consumers. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000); *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (Moran, J). Likelihood of confusion is typically a question of fact; it may, however, be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 173 (7th Cir. 1996). Counterfeit goods, those goods bearing a "spurious

3

mark which is identical with, or substantially indistinguishable from, a registered mark," are presumed to create a likelihood of confusion. 15 U.S.C. § 1127; *Coach, Inc., v. The Treasure Box, Inc.*, No. 3:11 CV 468, 2013 WL 2402922, at *4 (N.D. Ind. May 31, 2013) (collecting cases).

It is undisputed that Plaintiffs' trademarks are protectable and that Defendants sold merchandise bearing the Plaintiffs' trademarks without license or authorization. The record shows that the merchandise Defendants marketed and sold was counterfeit as the marks on the merchandise are effectively indistinguishable from the Plaintiffs' trademarks, 15 U.S.C. § 1127, therefore it is presumed that the merchandise created a likelihood of confusion. *Coach,* 2013 WL 2402922 at *4. Defendants argue that no reasonable member of the public would believe that Plaintiffs offered the merchandise Defendants sold. Defendants, however, offer no legal or factual support for this contention. This Court finds that the undisputed facts establish that Plaintiffs had a protectable trademark and that Defendants' use of the trademark created a likelihood of confusion among consumers. Accordingly, this Court grants summary judgment on Counts I, II, and IV in Plaintiffs' favor.

*B. Statutory Damages*

Plaintiffs' ask this Court to find that Defendants' conduct was willful and award $150,000 in statutory damages per each of Plaintiffs' trademarks for a total of $600,000. A trademark owner may elect, at any time before final judgment is rendered, to recover an award of statutory damages, rather than actual damages, for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. 15 U.S.C. § 1117(c). The Lanham Act provides statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). The upper limit increases to $2,000,000 if the court finds that the use of the counterfeit mark was willful. 15 U.S.C. § 1117(c)(2). Courts have established that "[w]illful infringement may be

4

attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Microsoft Corp. v. Logical Choice Computers, Inc.*, No. 99 C 1300, 2001 WL 58950, at *11 (N.D. Ill. Jan. 22, 2011) (Pallmeyer, J) (citation omitted). Knowledge need not be proven directly; it may be inferred from a defendant's conduct. *Id.*; *see also Bulgari, S.P.A. v. Xiaohong, et al.*, No. 15-cv-05148, 2015 WL 6083202, at *2 (N.D. Ill. Oct. 15, 2015).

Section 1117(c) provides this Court with little guidance on how to determine a damage award. Courts therefore look by analogy to case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c) for additional guidance. *See Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03 C 4986, 2004 WL 2534378, at *4 (N.D. Ill. Nov. 8, 2004) (Holderman, J.) (citation omitted). District courts enjoy wide discretion in awarding statutory damages, and may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (citation omitted). Courts may also take into account the value of the plaintiff's brand and the efforts taken to protect, promote, and enhance the brand. *See Lorillard*, 2004 WL 2534378, at *6.

Defendants argue that their conduct was not willful because they were "fooled by unscrupulous wholesalers" despite employing internal compliance mechanisms and procedures to identify potential infringement issues and because they did not use Plaintiffs' trademarks in product captions on their websites. They also claim that they were unfamiliar with Plaintiffs' trademarks, that they never physically handled the counterfeit merchandise, and that they only made minimal sales. Defendants' arguments are unpersuasive as the affidavits they offer in support, most of which are unsigned, undated, and unnotarized, are conclusory and are unsupported by documentary evidence, such as agreements with wholesalers or sales records, or the record. *Ozlowski v. Henderson*,

5

237 F.3d 837, 840 (7th Cir. 2001 (citation omitted) (unsupported conclusory allegations and self-serving affidavits will not preclude summary judgment).

Defendants' exclusion of Plaintiffs' trademarks in a product caption can be evidence of willful action taken to avoid detection. *See, e.g., Light v. Zhangyali*, No. 15 CV 5918, 2016 WL 4429758, at *3 (N.D. Ill. Aug. 22, 2016) (Shah, J.) (wording of product descriptions can ensure that a product can be easily found through a search without calling attention to a brand name); *Luxottica Grp. S.p.A. v. Li Chen*, No. 16 C 6850, 2017 WL 836228, at *2 (N.D. Ill. Mar. 2, 2017) (Ellis, J.). Moreover, the record demonstrates that while Plaintiffs' trademarks may not have appeared in product captions, they certainly appeared in a majority of the pictures of the counterfeit products posted on Defendants' websites. (Dkt. 62, attachments 7-18). The counterfeit products also closely resemble the style of products offered by Plaintiffs. Finally, Plaintiffs' trademarks are relatively well known. This Court concludes that, at the very least, Defendants were willfully blind to the counterfeit nature of the merchandise they sold, and such blindness is sufficient for enhanced damages. *See, e.g., Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989); *Light,* 2016 WL 4429758 at *3 (citations omitted).

Defendants also contend that Plaintiffs' requested award of $600,000 is excessive because Defendants did not operate large scale operations, because they removed the counterfeit merchandise from their websites, and because their account statements, which they do not provide to this Court, reflect minimal sales. Defendants rely on multiple cases for their contention that this court should award minimal damages.[2] These cases, however, are either inapplicable or relate to sales of counterfeit items through brick-and-mortar stores.

---

[2] *Joe Hand Promotions, Inc. v. Hernandez*, No. 03 CIV. 6132 (HB), 2004 WL 1488110 (S.D.N.Y. June 30, 2004) (discussing damages for violations of the Cable Communications Policy Act); *Coach v. Treasure Box, Inc.*, No. 3:11CV468-PBS, 2014 WL 888902, at *4 (N.D. Ind. Mar. 6, 2014) (awarding $3,000 per mark for a total award of $45,000 in statutory damages for sales out of a small retail shop); *Coach, Inc. v. Becka*, No. 5:11-CV-371 (MTT), 2012 WL 5398830, at *6–7 (M.D. Ga. Nov. 2, 2012) (awarding $2,000 per mark after considering the defendant's unintentional infringement, cooperation in the matter, and that sales occurred out of a small retail shop).

This Court acknowledges that Plaintiffs have not introduced evidence that Defendants operate large scale counterfeiting operations. This Court also notes that Defendants have hired counsel and appeared, rather than defaulting, which, to a limited extent, mitigates their willful counterfeiting. *Light*, 2016 WL 4429758 at *4. Defendants' advertisement of counterfeit products through internet stores, however, illustrates their potential to reach a wide-ranging market, allowing for far greater distribution than brick-and-mortar shops. *Li Chen*, 2017 WL 836228 at *3. Further, Plaintiffs began using their trademarks as early as 1969, have expended time and resources on marketing and branding campaigns, and have sought to protect their brands by filing suits against counterfeiters, and would have a difficult time proving actual damages. Accordingly, this Court finds that a large damages award is necessary to reflect Defendants' reckless disregard for Plaintiffs' rights and to deter Defendants and others from engaging in similar conduct.

Considering the factors discussed above, this Court finds it appropriate to award Plaintiffs $50,000 in statutory damages per counterfeit mark per type of goods sold, rather than the requested $150,000 per counterfeit mark, and grants the following damages per defendant:

- chace_expo2010 – $50,000 (for the use of the MLB trademark)
- jpzh11 – $50,000 (for the use of the MLB trademark)
- best999 – $50,000 (for the use of the MLB trademark)
- bailey-730 – $150,000 (for the use of the three NBA trademarks)
- ailing-9 – $150,000 (for the use of the three NBA trademarks)
- zhangjie201680 – $150,000 (for the use of the three NBA trademarks)
- allinprior518 – $50,000 (for the use of the three NBA trademarks)
- qingweihewu* – $150,000 (for the use of the three NBA trademarks)
- chent1217-3 – $150,000 (for the use of the three NBA trademarks)
- flus171 – $50,000 (for the use of the MLB trademark)
- yifei_myson – $150,000 (for the use of the three NBA trademarks)
- leixianwei2016_0 – $150,000 (for the use of the three NBA trademarks)

*C. Permanent Injunction*

Plaintiffs ask this Court to permanently enjoin Defendants from advertising and selling counterfeit versions of Plaintiffs' products. To obtain a permanent injunction, a party must

7

demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

Defendants do not contest the permanent injunctive relief in their response, apparently conceding the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Even if Defendants had not conceded the issue, the record clearly demonstrates that Plaintiffs' request for injunctive relief is appropriate. Defendants sold counterfeit goods using Plaintiffs' trademarks and the resulting harm to Plaintiffs' brands cannot be fully compensated by the statutory damages award. *See, e.g.*, *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) ("[D]amage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy."). Moreover, the public interest favors a permanent injunction because "enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). Accordingly, this Court grants Plaintiffs' motion for injunctive relief to enjoin Defendants from advertising, offering for sale, or selling counterfeit products bearing Plaintiffs' trademarks or otherwise violating Plaintiffs' rights. 15 U.S.C. § 1116(a).

*D. Attorney's Fees and Costs*

Finally, Plaintiffs ask this Court to award attorney's fees and costs. In a case involving the use of counterfeit marks, barring extenuating circumstances, courts are to award reasonable attorney's fees where the violation consists of "intentionally using a mark or designation, knowing such mark or designation is a counterfeit . . . in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(b). Defendants contend that attorney's fees are

8

inappropriate, citing *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958 (7th Cir. 2010) for support. *Nightingale*, however, does not apply here as it does not involve a counterfeit mark and relates to a request for attorney's fees pursuant to 15 U.S.C. § 1117(a). *See Luxottica Grp. S.p.A., et al. v. Hao Li, et al.*, Nos. 16 CV 487, 16 CV 1227, 2017 WL 621966, at *6 (N.D. Ill. Feb. 15, 2017) (Shah, J.). Defendants do not identify any extenuating circumstances that would preclude this Court from awarding attorney's fees pursuant to 15 U.S.C. § 1117(b). Accordingly, this Court finds that Plaintiffs are entitled to attorney's fees. As the prevailing parties, Plaintiffs are also entitled to costs. Fed. R. Civ. P. 54(d)(1).

**Conclusion**

For the foregoing reasons, Plaintiffs' motion for summary judgment [59] is granted with respect to Counts I, II, and IV. This Court grants Plaintiffs' request for a permanent injunction. This Court also finds that Plaintiffs are entitled to statutory damages, as detailed above, and attorney's fees and costs. In filing their request for attorney's fees, Plaintiffs should comply with the local rules. By September 22, 2017, Plaintiffs should also file a brief status report with this Court identifying any remaining defendants. If there are no remaining defendants, the status report should say so.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: September 14, 2017